**THE COLONIAL BEACON.**

**THE JAMES P. McGUIRL.**

District Court, S. D. New York.

April 14, 1948.

110

Kirlin, Campbell, Hickox & Keating, of New York City (Raymond T. Greene and Ira A. Campbell, both of New York City, of counsel), for libellant.

Alexander & Ash, of New York City (Edward Ash and Joseph A. Calamari, both of New York City, of counsel), for respondents.

BYERS, District Judge.

The libellant's tanker Colonial Beacon, southbound, entering the East River from Hell Gate on the early morning of February 13, 1943, was struck on her port side near the bow by respondents' tow, bound north, for 91st Street, Manhattan. Such damage as was sustained by the tanker is responsible for this litigation. No survey was held, which supports an inference that the cause is not of major dimensions.

### Findings of Fact.

1. Ownership, operation and control were as pleaded.

2. Shortly before 2:15 A.M. on February 13, 1943, the tanker Colonial Beacon, in ballast, passed Mill Rock on a course as indicated on Libellant's Exhibit 1, which would take her into and through the westerly channel between Blackwell's Island and the Manhattan shore, on a voyage from Portland, Maine, to Bayonne, New Jersey.

3. When the Mill Rock was almost abeam to starboard, she sighted two tows headed northerly in the said westerly channel of Blackwell's Island, in line, the second one about 500 feet astern of the first.

4. The tanker was proceeding at half speed, 4½ knots, against a flood tide of about 3½ miles' strength as it moved up the East River.

5. The tanker blew a one-blast signal to the first tow, which was answered, and a port passing was effected off Mill Rock, with ample clearance.

6. The second tow was the one involved in this case; it consisted of the steamtug McGuirl (76 feet by 23 feet, 400 horsepower) with two loaded Sanitation scows (150 feet by 37 feet) made up alongside, the No. 1 to port, and the No. 7 to starboard. The stern of the tug and the aft ends of the scows were about in line, and the forward inside corners of the latter were held together (i. e., 5 feet apart) by lines. The No. 7 was being towed stern first, and the No. 1 bow first.

7. The night was clear, visibility good, and such wind as prevailed had no effect upon the navigation of the tanker or the McGuirl tow.

8. The speed at which the tow was moving is not the subject of testimony but is assumed to have been not less than 6 miles over the ground.

9. When the tow was in the vicinity of 86th Street, the tug blew one long blast, intending it as a bend whistle, to signify the purpose of rounding Horns Hook to the port.

10. At the time of blowing that whistle, the tug had sighted the tanker, which showed its red light and was between Hog's Back and Mill Rock.

11. The tanker answered this signal with one short blast.

*Comment:* This Finding is based on conflicting testimony of the respondents' witnesses, but the version of the tug's Captain Gurney (p. 111) is accepted in preference to that of her deckhand Duffy, and Yolango who was on the scow No. 7. Joyce, for the tanker, bears out Gurney as to the tanker's blowing a one-blast signal.

12. The tug blew two whistles to indicate a starboard passing, about 3 minutes later.

13. The tanker blew one blast.

14. The tug again blew two blasts when about 100 feet from the tanker.

15. The tug then blew three whistles, putting her engines in reverse at the same time.

*Comment:*

The last four Findings have been arrived at after considering the conflicting testimony of the witnesses named, and the recantation by Gurney at the trial, of his testimony before the Coast Guard—given about 16 days after the collision—as to his having first blown a one-whistle signal to the tanker which the latter answered with one.

But for that recantation which cannot be ignored (although it lacked something of persuasiveness), the fault of the McGuirl would be too flagrant to justify further comment. I prefer to dispose of the cause on the theory that the tug crossed the tanker's first suggestion of a port passing, for the responsibility thereby assumed is the pivot on which decision must turn.

16. The tow swung around Horns Hook at a distance of from 300 to 400 feet, and this means that, when she was off 86th Street, she was about in mid-channel. In other words, she was not hugging close to the Manhattan shore from the time of sounding her first bend signal. The necessary approach to 91st Street required the tow to cross the flood tide starting at least in midstream to avoid being carried north of her destination.

17. The tug blew her first two-blast signal about 3 minutes after giving the one long blast off 86th Street, in which time the tow moved perhaps some 1500 feet through the water in a general heading toward 91st Street. Since she was athwart the tide, she did not move straight ahead, but was carried in a broadside movement.

18. When the tug realized that collision was inevitable, she reversed her engines and blew 3 blasts of her whistle. She did not lose headway entirely, and one of the barges struck the tanker, causing the damage in suit.

19. The tanker was being navigated by her Master, McLain, who was physically incapacitated from testifying at the trial. Her helmsman was Flagg, who was at the wheel, and her mate, Joyce, was on the bridge acting as lookout. The tanker's steering gear was electrically operated, and was in good condition and functioned properly.

20. The first 2-blast signal blown by the McGuirl was not heard aboard the tanker, and after the latter had blown her second one blast, and received no audible (to her) answer, the tanker blew her danger signal of several (4 or more) short blasts, and promptly thereafter stopped and then reversed her engines. The tanker stopped, and had begun to gain sternway, when the tow was observed to be close aboard, when the tug blew two whistles (Finding 12), and then the port barge hit the tanker, causing the said damage.

## Conclusions.

1. The tug McGuirl, after hearing the one-blast signal from the tanker (as her captain says), waited three minutes before blowing her first two-blast signal. She miscalculated her ability to cross ahead of the oncoming tanker, although she knew the latter expected a port passing. If she intended to disregard the tanker's signal, she should have promptly blown an alarm and arrested her own headway as far as possible, and she is solely to blame for the result of her own faulty navigation.

The propriety of her own one-blast long signal is questionable for its possible effect upon the tanker, which was then in view, and by her own testimony headed for the westerly channel of Blackwell's Island.

2. The custom of starboard passing in Hell Gate, in a flood tide, had nothing to do with the maneuvers of the McGuirl tow, for it did not come into play at any time.

3. The libellant is entitled to the usual decree with costs, to be settled on notice.